**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

VENTURA LOPEZ-JACUINDE, a.k.a.
Ventura Jacuinde Lopez,
                    *Petitioner,*

v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 07-72046

Agency No.
A041-118-057

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 12, 2010*
San Francisco, California

Filed April 12, 2010

Before: Betty B. Fletcher, Richard R. Clifton, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge B. Fletcher

---

*The panel unanimously concludes that this case is suitable for decision
without oral argument. *See* Fed. R. App. Proc. 34(a)(2).

## COUNSEL

James Todd Bennett, El Cerrito, California, for the petitioner.

Ari Nazarov, U.S. Department of Justice, Civil Division, Washington, D.C., for the respondent.

**OPINION**

B. FLETCHER, Circuit Judge:

Petitioner Ventura Lopez-Jacuinde seeks review of a decision by the Board of Immigration Appeals ("BIA") that held that his state felony conviction for possession of pseudoephedrine with intent to manufacture methamphetamine was a "drug trafficking crime" which constitutes an "aggravated felony" under federal law, rendering him statutorily ineligible for cancellation of removal. Lopez-Jacuinde argues that "drug trafficking crime," as defined by the relevant federal statute, requires the use of a firearm and thus the state criminal statute, which has no such element, is broader than the federal statute. He argues further that the state criminal statute is broader than the corresponding federal crime because the federal crime imposes a requirement, not found in the state statute, as to the minimum amount of pseudoephedrine possessed by the defendant. We disagree and deny the petition for review.

## I.   Facts and Procedural History

On February 10, 2005, Lopez-Jacuinde, a citizen of Mexico, was convicted of the offense of possession of pseudoephedrine with intent to manufacture methamphetamine or any of its analogs in violation of California Health and Safety Code § 11383(c)(1).[1] He was served with a notice to appear for removal proceedings that alleged he had committed an aggravated felony.[2] He filed an application for cancellation of

---

[1] Section 11383 was amended after Lopez-Jacuinde's conviction in 2005. Likewise, 21 U.S.C. §§ 802, 830(b)(3), also relevant to this appeal, were amended during this period. Citations to these statutes are to the versions effective in 2005.

[2] Conviction of an aggravated felony renders an alien removable and ineligible for cancellation of removal. *See* 8 U.S.C. § 1227(a)(2)(A)(iii); 8 U.S.C. § 1229b(a)(3).

removal and a motion to strike the aggravated felony charge. The Immigration Judge ("IJ") denied Lopez-Jacuinde's motion to strike and ordered him removed from the United States. The BIA dismissed Lopez-Jacuinde's petition for review and agreed with the IJ that Lopez-Jacuinde had been convicted of an aggravated felony. The BIA held that a "drug trafficking crime" does not require the use of a firearm, and that because Lopez-Jacuinde was convicted of possession of pseudoephedrine with intent to manufacture methamphetamine, any federal requirement as to the amount of pseudoephedrine possessed was inapplicable.

## II. Jurisdiction and Standard of Review

We have jurisdiction under 8 U.S.C. § 1252 to review final removal orders issued by the BIA. However, we lack jurisdiction to review an order of removal against an alien removable for having committed an aggravated felony. *See* 8 U.S.C. § 1252(a)(2)(C); *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 909 (9th Cir. 2004). "Nonetheless, this Court retains jurisdiction to determine its jurisdiction, which includes determining whether a particular offense constitutes an offense governed by the jurisdiction-stripping provisions." *Cazarez-Gutierrez*, 382 F.3d at 909. We may thus review whether Lopez-Jacuinde's conviction constituted an aggravated felony. This court reviews de novo the question of whether a particular offense constitutes an aggravated felony for which an alien is subject to removal. *Id.*

## III. Discussion

**[1]** We determine whether a state law conviction is an aggravated felony using either the categorical or modified categorical approach set forth in *Taylor v. United States*, 495 U.S. 575, 600-02 (1990) and *Shepard v. United States*, 544 U.S. 13, 20-21 (2005). *Pelayo-Garcia v. Holder*, 589 F.3d 1010, 1012 (9th Cir. 2009). "Under the categorical approach, we compare the elements of the statute of conviction with a

federal definition of the crime to determine whether the con-
duct proscribed by the statute is broader than the generic fed-
eral definition." *Id.* (quotation marks omitted).

## A. Use of a Firearm Is Not Required for a State Con-
viction to Constitute an Aggravated Felony as a
"Drug Trafficking Crime"

**[2]** An "aggravated felony" includes "illicit trafficking in
a controlled substance (as defined in section 102 of the Con-
trolled Substances Act), including a drug trafficking crime (as
defined in section 924(c) of title 18, United States Code)." 8
U.S.C. § 1101(a)(43)(B). The Ninth Circuit has interpreted
this text as providing two analytic routes through which a
state drug felony may be classified as an aggravated felony:
(1) if the state crime contains a "trafficking element," it is an
aggravated felony under the "illicit trafficking in a controlled
substance" prong of § 1101(a)(43)(B); or (2) if the state
offense would be punishable as a felony under federal drug
laws, it is an aggravated felony under the "including a drug
trafficking crime" prong of that section. *See Rendon v.
Mukasey*, 520 F.3d 967, 974 (9th Cir. 2008). It is this second
route, specifically the reference to 18 U.S.C. § 924(c) as con-
taining the definition of "drug trafficking crime," that is at
issue in this appeal.

**[3]** "Drug trafficking crime" is expressly defined in 18
U.S.C. § 924(c)(2) as "any felony punishable under the Con-
trolled Substances Act (21 U.S.C. 801 et seq.), the Controlled
Substances Import and Export Act (21 U.S.C. 951 et seq.), or
chapter 705 of title 46."**³** 18 U.S.C. § 924(c)(1), however, pro-
vides for an enhanced punishment for the use or possession of
a firearm in relation to a drug trafficking crime. Lopez-
Jacuinde maintains that despite the explicit definition of "drug

---

**³**Lopez-Jacuinde's state offense is punishable as a federal crime under
21 U.S.C. § 841(c), possession of a listed chemical with intent to manufac-
ture a controlled substance.

trafficking crime" in § 924(c)(2), the relevant definition of "aggravated felony" found in 8 U.S.C. § 1101(a)(43)(B) includes the firearm element of § 924(c)(1) in its reference to the definition of "drug trafficking crime" in § 924(c). Therefore, he argues, Congress must have intended that to constitute an "aggravated felony" a "drug trafficking crime" must also involve use or possession of a firearm.

**[4]** This argument is unpersuasive. The text of 8 U.S.C. § 1101(a)(43)(B) refers unambiguously to the *definition* of drug trafficking crime found in § 924(c), despite containing a reference to § 924(c) as a whole. Paragraph 924(c)(2) in turn provides the definition of "drug trafficking crime" for all of subsection (c), with no reference to a firearm element. This definition is set off in a separate paragraph from § 924(c)(1), which by its terms is only an enhanced punishment provision. Thus, regardless of whether a defendant's conduct involves the use of a firearm, it is by reference to § 924(c)(2) that a court will determine whether the conduct constitutes a drug trafficking crime. In fact, because § 924(c)(1) itself applies to drug trafficking crimes, a definition of "drug trafficking crime" that required the use of a firearm would render that paragraph strangely self-referential and confusingly circular.[4]

**[5]** We note that although § 1101(a)(43)(B) was amended in 1994—and that prior to these amendments § 1101(a)(43)(B) referred with more precision to paragraph (2) of § 924(c)—this does not change our conclusion. As cogently explained by the Tenth Circuit in *United States v. Valenzuela-Escalante*, 130 F.3d 944, 946-47 (10th Cir. 1997), the amendment to § 1101(a)(43)(B) was not intended to

---

[4]Along similar lines, we observe that § 924(c) paragraphs (3) and (4) contain definitions of "crime of violence" and "brandish," neither of which can sensibly be incorporated into the definition of "drug trafficking crime." This reinforces our conclusion that the general reference to § 924(c) was not intended to distract our attention from the definition found in paragraph (2)—a definition that applies by its own terms for all of § 924(c).

restrict the crimes that constitute aggravated felonies. We are further persuaded by the reasoning of *Valenzuela-Escalante*, which held that a drug trafficking crime need not involve the use of a firearm to constitute an aggravated felony. *See id.* We hold that the use of a firearm is not a necessary element of a "drug trafficking crime" for the purpose of determining whether an alien has been convicted of an "aggravated felony."

### B. The Federal Crime Corresponding to § 11383(c)(1) Does Not Require Possession of a Minimum Amount of Pseudoephedrine

**[6]** Lopez-Jacuinde also contends that his conviction for violating California Health and Safety Code § 11383(c)(1) is not a categorical aggravated felony because the state statute proscribes possession of any amount of pseudoephedrine with intent to manufacture methamphetamine, and the corresponding federal crime requires proof that the defendant possessed more than a certain amount of pseudoephedrine. This argument is without merit because the federal offense corresponding to Lopez-Jacuinde's state conviction has no such requirement as to amount.

**[7]** Lopez-Jacuinde's argument relies on an attempt to incorporate federal regulatory provisions requiring that retail distributors keep records of high-quantity pseudoephedrine transactions into separate federal provisions criminalizing possession of pseudoephedrine with intent to manufacture methamphetamine. Our opinion in *United States v. Kim*, 449 F.3d 933, 937-38 (9th Cir. 2006), describes the federal scheme in some detail. As *Kim* explains, the "upshot [of the record-keeping provisions] is that over-the-counter sales of pseudoephedrine had to be recorded if the items purchased totaled [nine] grams or more and (1) were not in blister packs or (2) were in packages of more than three grams per package."[5]

---

[5]The threshold for triggering the reporting requirements was lowered in the year 2000 from twenty-four grams to nine grams.

*Id.* at 938. In contrast to the record-keeping scheme, 21 U.S.C. § 841(c)(1) independently criminalizes possession of a listed chemical with intent to manufacture a controlled substance. Lopez-Jacuinde contends that the court must read the quantity requirements in the record-keeping provisions applicable to retail distributors into elements of the crime of possession with unlawful intent.

**[8]** We have already rejected this argument in a similar context. *See id.* at 938-41. The defendant in *Kim* argued that the quantity requirements in the record-keeping scheme should apply to federal criminal provisions punishing the sale of pseudoephedrine by a person knowing or having reasonable cause to believe it would be used to manufacture a controlled substance. *See id.* at 939. We held that the thresholds as to amount set by the record-keeping requirements were not relevant to the criminal provisions. *See id.* at 939-40. The same reasoning is controlling here.

## IV.   Conclusion

**[9]** We find no error in the BIA's determination that Lopez-Jacuinde was convicted of an aggravated felony. Because the BIA correctly applied the relevant statutes, there was no due process violation.

PETITION DENIED.